[No. 1243.]

THE CURRENCY MINING CO. v. BENTLEY ET AL.

1. PRACTICE—INSTRUCTIONS—ADVERSE CLAIMANTS.
In a suit between adverse claimants to a mining claim the defendant
asked the following instruction to the jury: "You are instructed
that if you find from the evidence that both parties to the action
are entitled to separate and different portions of the premises in
conflict, you may so find and return a description of the ground
accordingly," which was refused by the court and under the instruc-
tions of the court the jury were required to find either for the
plaintiff or defendant the entire premises. There was evidence
introduced tending to support the contention that the area in con-
flict should be divided between the parties. *Held* error to refuse
to give the instruction asked. Under our code, section 269, it is
expressly contemplated that there may be a division between ad-
verse claimants of the area in conflict, and that in actions of this
character the jury may return such a verdict if the evidence war-
rants it. Such a division is also permissible by the federal statutes
upon which adverse suits between mining claims are based. U. S.
Rev. Stats. sec. 2326.

2. CHAMPERTY AND MAINTENANCE.
The common-law doctrines of champerty and maintenance have been
entirely superseded by our statutes. (Gen. Stats. sec. 815.) Where
the validity of a mining location is at issue and there are a number
of claimants to different portions of the ground embraced in the
disputed location, there is no objection either in morals or law, to
the question being tested by one suit instituted by one of the con-
testants, and carried on at the expense of all interested in the gen-
eral result. Each of the co-claimants to the territory within the
contested location had a right to assist the other without running
counter to the statute, and this right was not lost by the failure of
some of the co-claimants to institute adverse proceedings within
the time allowed by the federal statutes.

3. SAME—PRACTICE.
Evidence of facts to prove the existence of a champertous agreement
within the prohibition of the statute is not admissible unless the
same has been pleaded.

*Appeal from the District Court of El Paso County.*

Messrs. WILSON & SALMON, for appellant.

No appearance for appellee.

WILSON, J., delivered the opinion of the court.

This was an adverse suit instituted by plaintiffs, Bentley et al., as owners of the Dan McDonald lode mining claim, against defendant, the owner of the engineer lode mining claim, situate in Cripple Creek mining district. The area in conflict was about one sixth of an acre. It embraced the principal workings of the defendant, including its discovery shaft. Verdict and judgment were for plaintiffs for the possession of the whole territory in conflict. From this defendant appeals.

There are nine assignments of error, but only one requires the special consideration of this court.

Among the instructions to the jury asked by the defendant and which the court refused to give was the following: "2. You are instructed that if you find from the evidence that both parties to the action are entitled to separate and different portions of the premises in conflict, you may so find and return a description of the ground accordingly."

It is expressly contemplated by the code that there may be a division between adverse claimants of the area in conflict, and that in actions of this character the jury may return such a verdict if the evidence warrants it. "If the verdict be for part of the premises described in such complaint, the verdict shall particularly specify such part, as the same shall have been proved, with the same certainty hereinbefore required in the description of the premises claimed." Code, sec. 269, subdivision 5.

Such a division is also permissible by the federal statutes upon which adverse suits between mining claims are based. U. S. Rev. Stat. sec. 2326.

It follows therefore that if in the trial of an adverse suit there is any testimony submitted upon which to base a contention that the area in conflict should be divided between the parties, it is the duty of the court to permit the testi-

mony to go to the jury with an instruction, if requested, as to their right and privilege in the consideration of such evidence, and as to what their verdict might be if they believed it. *Oscamp v. Crystal River Mining Co.*, 58 Fed. Rep. 297. On the trial of this cause, there was some evidence of this character. We of course express no opinion as to the weight of it, nor as to whether there was enough to sustain a verdict giving to plaintiffs only a part of the area in conflict between the mining claims, or dividing it between the parties. This is immaterial. There was some such evidence, and under these circumstances, it was the duty of the court to have given the instruction asked by defendant, or one of like import. There was no such instruction given. On the contrary, the court instructed the jury as follows: "19. In a case of this kind, your verdict may be one of three kinds. It may be, if the evidence so warrant it, for the plaintiffs, or it may be for the defendant, or it may be to the effect that neither the plaintiffs nor the defendants have made a valid location of the said lodes in controversy in this action." Then followed directions as to the form of the three kinds of verdict which might be rendered. One in favor of plaintiffs to the effect that "they have established their right and title to and are entitled to the possession and occupancy of the ground in controversy herein, by reason," etc. One in favor of defendant of similar import, and one to the effect that neither party had established their right to the ground. This was in effect saying to the jury that they must find for the plaintiffs or for the defendant for the whole of the conflict, or that neither was entitled to any part of it. This was error for which the judgment must be reversed, and the cause remanded for a new trial.

There is another assignment of error, which, although not essential to the determination of this case, as we view it, it might be proper to refer to, as there may be a new trial. It is claimed by defendant that another lode location, known as the Mollie Gibson, conflicted with the Engineer, covering the greater portion of it; that the owners of the Mollie

Gibson had lost their right to adverse the Engineer application for patent by a failure to institute such proceedings within the time limited by law, and that they had agreed with plaintiffs to defray the expenses of prosecuting this suit in order to revive their lost rights in the Mollie Gibson lode. These facts were not set up in the answer, but during the trial defendant made an offer to introduce testimony to prove them. Plaintiffs objected, and the objection was sustained by the court. Defendant claims that it was the duty of the court to have admitted such evidence, and, if it sustained the alleged facts, to have dismissed the suit on the ground that the agreement under which the suit was being prosecuted was a champertous one, and was obnoxious to the statute against maintenance. Gen. Stats. sec. 815. We cannot agree to this contention. The enactment of this statute has superseded the common law offenses of champerty and maintenance. *Kutcher v. Love*, 19 Colo. 546 ; *Newkirk v. Cone*, 18 Ill. 449.

It follows, therefore, that the determination of the nature of a contract, with reference to its being champertous or obnoxious to the statute of ·maintenance, depends upon the construction of the statutes, and not upon the common-law rules pertaining to them. In this case, even if defendant had been permitted to offer the excluded testimony, and had proven the facts as alleged in its offer, the contract between plaintiffs and the owners of the Mollie Gibson would not have come within the prohibition of the statute, so as to have justified the court in dismissing the suit. The mineral lands of the United States are held in trust for its citizens, any one of whom has a right to protest against, and resist by all lawful methods the acquisition of such lands by means of unlawful and improper location. Moreover, the owners of the Mollie Gibson had an interest and concern in this suit within the meaning of the statute. They were alike with plaintiffs contestants for ground embraced within the Engineer location, and if plaintiffs prevailed, although not parties to the suit, the result would have been a material and direct benefit

to them.   If the Engineer location proved to be invalid, its title to all ground therein, including that claimed by the Mollie Gibson owners, would have failed.   The latter were as to the owners of the Dan McDonald, in the attitude of co-claimants to a large portion of the territory within the Engineer location, and each had a right to assist the other without running counter to the statute.   The Mollie Gibson owners had not lost this right by their failure from some unexplained cause to institute adverse proceedings within the time allowed by the federal statute.   Where the validity of a mining location is at issue, and there are a number of claimants to different portions of the ground embraced in the disputed location, we see no objection, either in morals or law, to the question being tested by one suit instituted by one of the contestants, and carried on at the expense of all interested in the general result.   Such a course of procedure would not militate against the purpose of all statutes of maintenance and champerty, which is to prevent strangers from obtruding themselves into suits and promoting vexatious litigation.   It would be manifestly in restraint of litigation to substitute one suit for many, and would not even be an offense at common law.   *Thallhimer v. Brinckerhoff*, 3 Cowen, 623 ; 15 Am. Dec. and notes, 308 ; *Board of Commissioners, etc., v. Jameson*, 86 Ind. 154.

All the authorities cited by defendant in support of its position on this point are from states in which the rule of the common law as to maintenance and champertous contracts still prevails.   In many of the states, it is not recognized, even where it has not been superseded by statute, and where it does exist, its harsher features have been greatly modified.   In *Roberts v. Cook*, 20 How. U. S. 467, the court said: " The ancient English doctrines of champerty and maintenance have not found favor in the United States." In *Duke v. Harper*, 2 Mo. App. 1, it was said: "The whole doctrine of maintenance and champerty is a relic of a state of things long since passed away."

Conceding also, that the testimony offered would have

proven the existence of an agreement within the prohibition of the statute, the offending party would have been subject to the penalty prescribed, but it would not have followed that the court should have dismissed the suit on that ground.

Again, if plaintiffs had by reason of those facts become liable to lose their standing in court, or any of their rights by virtue of this statute, it was the duty of defendant to have plead them before it could have asked to present evidence in support of them. This it wholly failed to do.

The testimony offered in this respect was immaterial and irrelevant to any issue involved in the cause, and was not in support of any plea set up in the answer. In any aspect of the case, the court did not err in excluding it.

For the error first noticed, however, the judgment must be reversed.

*Reversed.*